2009 Ark. 335

Ronald BLANCHARD, Appellant,

v.

STATE of Arkansas, Appellee.

No. CR 08–1380.

Supreme Court of Arkansas.

June 4, 2009.

David O. Bowden, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by David R. Raupp, Sr. Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

Appellant Ronald Blanchard was convicted of sexual assault in the second degree and appealed his conviction, asserting

that the trial court erred in allowing the introduction of 1022 pornographic images taken from appellant's computer. The Arkansas Court of Appeals reversed and remanded, finding that the trial court abused its discretion in admitting the photographs without exercising any discretion. The State petitioned this court for review, which we accepted pursuant to Ark. Sup. Ct. R. 1–2(e). When we grant review following a decision by the court of appeals, we review the case as though the appeal was originally filed with this court. *Branning v. State*, 371 Ark. 433, 267 S.W.3d 599 (2007). We find that appellant's argument is not preserved for our review and affirm.

Appellant does not challenge the sufficiency of the evidence supporting his conviction; therefore, only a brief recitation of the facts is necessary. Appellant was charged with rape and sexual assault in the second degree after his stepdaughter accused him of sexually abusing her for years. A jury trial was held on July 17 and 18, 2007, at which the victim, who was fourteen at the time of the trial, testified that appellant began abusing her when she was five years old. She testified that he would come into her room and tickle her "private areas" and that it later progressed to both giving and receiving oral sex, to appellant using a vibrator on her, and to appellant filming these acts with a camcorder. She also testified that appellant showed her a video of him and her mother having sex and also showed her other pornographic movies and images in magazines and on the computer, including images of bestiality.

On the second day of trial, prior to the start of the proceedings, the following conversation between court and counsel took place regarding a CD containing pornographic images found on appellant's computer:

DEFENSE COUNSEL: I guess my second issue, and I may have not been clear on this, but yesterday as far as these images were concerned I made two arguments. One is that they were, you know, that they were more prejudicial and the other was that they were cumulative. And you said that they were not more prejudicial. I didn't know for sure if we were going to be able to limit 1,000 pictures down to, you know, five or ten, or, I mean they're all going to be representative of what's on there.

THE COURT: They went through them fast last time.[1] I don't remember, it seemed like it was less than 30 minutes.

DEFENSE COUNSEL: That's a pretty long time just for pictures and pictures and pictures.

PROSECUTOR: Well, Your Honor, our argument would be is the sheer number of them shows—goes to his predilection.

DEFENSE COUNSEL: And we could stipulate as to the number. I just think it's more for shock value than it is for—I mean it's not pictures of men and little girls which is what he's being charged with.

PROSECUTOR: Some of them are.

DEFENSE COUNSEL: Well, some of them are little girls standing on a beach, but it's not the same as—

PROSECUTOR: This is probative.

DEFENSE COUNSEL: Which is not the same as 1,000 pictures of horses and dogs and eels and fish.

THE COURT: The State went through them very fast last time. I don't think you're prejudiced by it. So, your objection's noted.

---

1. This is a reference to appellant's first trial, which ended in a mistrial due to juror misconduct.

Following the trial court's ruling, Jeffery Taylor from the Arkansas State Crime Lab testified that he performed the analysis of appellant's computer in this case. He testified that approximately 1000 pornographic images were found on the computer and also testified to various pornographic internet sites that had been visited by the user of the computer. The State then tendered the CD as Exhibit No. 8, to which appellant's counsel responded, "No objection." The CD of the pornographic images was shown to the jury, and Taylor testified as to the general nature of the images, which in his words included images that are "fetish in nature. . . . Something besides general adult pornography, that may include animal sex, and maybe transvestite, some children," and images involving defecation and urination. Taylor testified that his initial examination did not find any child pornography, but a closer review revealed pictures that involved persons of "questionable age" who might be children. When asked whether the images could be on the computer as a result of mistake or "pop-ups," Taylor testified that "based on the multitude of them and the fact that some of them were open and the websites that were visited that—it's my opinion that they were accessed on purpose."

At the close of the State's case, appellant made motions for directed verdict on both charges, which were denied. Appellant then testified and generally denied all of the victim's accusations. He did admit to visiting pornographic websites but stated he had no idea how the images on the CD came to be on his computer. Appellant renewed his motions for directed verdict, which were again denied. The jury found appellant not guilty of rape but guilty of sexual assault in the second degree, and he was sentenced to fifteen years' imprisonment and given a $15,000 fine. Appellant then filed a timely notice of appeal.

On appeal, appellant asserts that the trial court erred in admitting the CD containing the pornographic images. Our standard when reviewing the admission of photographs is well settled. As with other matters pertaining to the admissibility of evidence, the admission of photographs is a matter left to the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006). When photographs are helpful to explain testimony, they are ordinarily admissible. *Id.* Moreover, the mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. *Id.* Even the most gruesome photographs may be admissible if they assist the trier of fact in any of the following ways: by shedding light on some issue, by proving a necessary element of the case, by enabling a witness to testify more effectively, by corroborating testimony, or by enabling jurors to better understand the testimony. *Id.* However, in *Newman v. State*, 353 Ark. 258, 106 S.W.3d 438 (2003), this court explained:

Although highly deferential to the trial court's discretion in these matters, this court has rejected a carte blanche approach to admission of photographs. We have cautioned against "promoting a general rule of admissibility that essentially allows automatic acceptance of all photographs of the victim and crime scene the prosecution can offer." This court rejects the admission of inflammatory pictures where claims of relevance are tenuous and prejudice is great, and expects the trial court to carefully weigh the probative value of photographs against their prejudicial nature. We require the trial court to first consider whether such evidence, although relevant, creates a danger of unfair prejudice, and then to determine whether the danger of unfair prejudice substantially

outweighs its probative value. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

*Id.* at 284, 106 S.W.3d at 455 (quoting *Camargo v. State*, 327 Ark. 631, 637, 940 S.W.2d 464, 467 (1997)) (internal citations omitted).

On appeal, appellant argues that, by basing the admission of the photos on how long it would take to present them, as evidenced by the court's statement that "[t]hey went through them pretty fast last time," the court clearly did not exercise its discretion with regard to the content of the photos. Appellant also argues that there was no direct connection established between him and the photos, as there was no proof that it was appellant who had downloaded and collected the photos. And although appellant admits that some of the images were relevant and admissible, as they portrayed acts that the victim described in her testimony, appellant contends that the prejudicial effect of all 1022 photos being admitted greatly outweighed any probative value.

We find that we are unable to reach appellant's arguments on appeal because he failed to properly object to the introduction of the images on the CD. While appellant made the general argument that the pictures were cumulative and prejudicial, he failed to identify which images in particular should be excluded on that basis. Once appellant had conceded that some of the photographs were admissible, as demonstrated in the above colloquy, it was incumbent upon him to be specific as to which photographs were objectionable and which were not. Our case law requires that an objection be sufficiently specific to apprise the trial court of the particular error complained of; otherwise the right to appellate review is not preserved. *Cobbs v. State*, 292 Ark. 188, 728 S.W.2d 957 (1987). This is particularly

true in a case such as this with a large volume of images at issue. *Cf. Halford v. State*, 342 Ark. 80, 27 S.W.3d 346 (2000) (holding that appellant sufficiently preserved the issue of prejudicial photographs when it was clear from the context of the objection and the argument that the discussion pertained to the next two photographs to be admitted). And if the proper objection had been made below, the trial court would have been required to weigh the probative relevance of the photographs according to the standard set forth in *Newman, supra.*

Affirmed; court of appeals reversed.

BROWN, J., concurring.

HANNAH, C.J., dissenting.

ROBERT L. BROWN, Justice, concurring.

In my opinion, when Blanchard through counsel conceded that some of the photographs were relevant, it was incumbent upon him to be specific as to which photographs passed muster and which did not. Then, the judge would have been required to exercise his discretion. *See Smart v. State*, 352 Ark. 522, 104 S.W.3d 386 (2003).

Because of Blanchard's concession, the larger question of whether a prosecutor has *carte blanche* to offer over a thousand images, over a defendant's general objection on grounds of prejudice and cumulativeness, and whether the judge must exercise discretion at that point is not before us.

For these reasons, I concur.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. The majority simply ignores the objection made. First, Blanchard did not object to admission of the CD containing 1022 porno-

graphic images.[1] He objected to showing the jury a total of 1022 pornographic images.

Second, Blanchard objected by arguing that the State proposed to subject the jury to so many images for the "shock value." In other words, he asserted that the images were not being admitted to prove an element of the crimes charged but rather the large number of images was intended to prejudice the jury against him. Blanchard's objection was "sufficiently specific to apprise the trial court concerning the particular error complained of." *Cobbs v. State*, 292 Ark. 188, 191, 728 S.W.2d 957, 958 (1987). In response to the objection that the jury would be overwhelmed and prejudiced by the sheer number of pornographic images, the circuit court overruled the objection on the grounds that it would not take long to show that many images. The circuit court ruled without reviewing the images to determine what their collective impact might be. The ruling does not respond to the objection. The circuit court exercised no discretion. The failure of the circuit court to exercise discretion requires reversal and remand for that discretion to be exercised. *See, e.g., Rodgers v. State*, 348 Ark. 106, 71 S.W.3d 579 (2002) (discussing an allegation that discretion was not exercised and holding that reversal and remand is imposed under those circumstances).

According to the majority, because Blanchard admitted that some of the images were relevant, in order for the circuit court to exercise its discretion, he had to specifically identify each image and indicate whether he believed it to be objectionable. This misses the point entirely. Blanchard did not object based on relevance. Even if he believed that each and every image was relevant, his objection would be the same. Blanchard argued that admission of five or ten images would be proper, and he argued that admission of one-thousand and twenty-two images would be improper. The majority's analysis fails to address the issue presented on appeal. This case should be reversed and remanded.

---

1. As the majority notes, when the State introduced the CD, Blanchard stated, "No objection." Given Blanchard had just objected to showing the images to the jury, and lost the objection, it would have been unwise to oppose the introduction of the CD. He needed the CD in the record in order to obtain appellate review of whether the circuit court erred in ruling the images could be shown to the jury.