MIDWEST BUSLINES, INC. and Kenneth GLOSEMEYER *v.* Samuel JOHNSON

86-185 . 724 S.W.2d 453

Supreme Court of Arkansas
Opinion delivered February 23, 1987

*Saxton & Ayres*, for appellants.

*Pickens & Watson*, by: *Ray A. Waters, Jr.*; and *Eldridge & Eldridge*, by: *John D. Eldridge, III*, for appellee.

TOM GLAZE, Justice. Appellants, Midwest Buslines, Inc. (Midwest) and Kenneth Glosemeyer, appeal from a jury verdict awarding appellee $500.00 compensatory and $1,100.00 punitive damages. The verdict resulted from appellee's claim that, as a passenger on Midwest's bus, he was wrongfully ejected by Midwest's driver, Glosemeyer. For reversal, appellants contend the trial court erred by (1) failing to grant a judgment n.o.v. as to both the compensatory and punitive damages and (2) failing to declare a mistrial for remarks made by appellee's counsel during closing argument.

First, appellants claim that, as a matter of law, there was no substantial evidence upon which to submit the issue of compensatory damages to the jury and none to support the verdict it returned. Arkansas, appellants submit, has long held that, in the absence of showing physical injury, a recovery for mental suffering cannot be had in negligence actions. That being true, they conclude appellee is precluded from recovery here because he failed to show he suffered any physical injury, monetary or out-of-pocket damages, or pain, suffering, humiliation, distress or anguish.[1]

Appellants' recitation of the law is correct as far as it goes, but the so-called "no impact" rule in negligence actions has

---

[1] Appellants also suggest that, in the absence of physical injury, the appellee could only recover damages for mental anguish if he had pled and proved the tort of "outrage." Based upon the facts of this case, we do not believe appellee was limited to such a theory.

no application to willful and wanton wrongs, and those committed with the intention of causing mental distress and injured feelings. *Wilson* v. *Wilkins*, 181 Ark. 137, 139, 25 S.W.2d 428 (1930). In *Wilson*, the court said that mental suffering forms the proper element of damages in actions for willful and wanton wrongs and those committed with the intention of causing mental distress.

█ The case of *Arkansas Motor Coaches, Ltd., Inc.* v. *Whitlock*, 199 Ark. 820, 136 S.W.2d 184 (1940) is similar to the one at bar. There, Whitlock was awarded damages as a result of being wrongfully ejected from an Arkansas Motor Coaches bus, and, in sustaining that award, this court held that one could recover damages to compensate for mental anguish when that mental anguish is accompanied by constructive physical injury which may result from an actual restraint or coercion of the person. The court concluded that Whitlock suffered an actionable wrong for mental anguish when the bus driver, in evicting Whitlock from the bus, took his arm, led him from the bus and embarrassed him in front of the passengers.

█ In the instant case, the court instructed the jury that appellee was entitled to damages if it found the appellants had acted in a willful and wanton manner — an instruction and finding appellants say is not supported by the evidence. We disagree. Our standard of review, of course, is whether the verdict is supported by substantial evidence, giving the verdict the benefit of all reasonable inferences permissible under the proof. *Schuster's, Inc.* v. *Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987). Much of the testimony given in this matter is in irreconcilable conflict. On the day in issue, appellee, then seventy-one years old, was discharged from the University Medical Center in Little Rock where he had been treated for gastrointestinal bleeding and alcoholic hepatitis. The parties agreed that, during his hospitalization, appellee had been incontinent, or unable to control the discharge of his urine. The hospital apparently made arrangements for appellee to meet appellants' bus so he could go home to Bald Knob, and, when he left the hospital, he was wearing no shoes. Appellant bus driver, Glosemeyer, — having been placed on notice to expect a man (passenger) to come from the hospital — testified the appellee appeared and boarded the bus carrying a paper bag and wearing no shoes. Although the evidence seems clear that appellee did

urinate on the bus en route to Bald Knob, the testimony is uncertain concerning whether appellee had urinated in his pants when seated or in a cup while he stood in the aisle. Appellee testified that he had been unable to "hold [his] water," and he could not get to the restroom in the back of the bus because there were people in the aisle. No one apparently complained about appellee, but Glosemeyer said he had heard a commotion, and looked back to see appellee in the aisle and passengers with "funny looks on their faces," looking at appellee and then at Glosemeyer. Glosemeyer claimed that when he arrived at Cabot, he confronted appellee, at which time his pants were unzipped with his penis exposed, and he was holding a paper bag containing a cup with liquid in it. Glosemeyer said he did not touch appellee when evicting him from the bus, although he "probably held his arm so he would not trip." In doing so, Glosemeyer denied saying anything to appellee. Appellee, in turn, claimed he was left by Glosemeyer on the side of the road, not at the station, and when he asked how he was to get home, Glosemeyer replied, "I don't know, and I don't care." Appellee testified he became scared and nervous until the Cabot police found him and took him to the local police station. One passenger, who had been on the bus, testified that she saw no bus station where Glosemeyer evicted appellee, and, when she complained to Glosemeyer that appellee was sick and she hated to see him "put off" the bus, Glosemeyer said, "I don't care what it was." In sum, we believe the jury, in resolving the conflicts in appellee's favor, reasonably could have found that these circumstances did not warrant appellee's removal, and that the manner in which he was removed was willful, humiliating and embarrassing. Accordingly, we hold appellee's award of $500.00 in compensatory damages is supported by the evidence.

In addressing appellants' challenge of the punitive damages awarded appellee, we need not rehash the evidence just related. Appellants have detailed the evidence, but, in arguing it, reach a conclusion favorable to appellants that Glosemeyer had the duty to eject appellee from the bus and that no reasonable mind could conclude otherwise. Considering the conflicting evidence and testimony and when viewing it in appellee's favor, we simply cannot agree.

For their final point for reversal, appellants complain that appellee's attorney, in closing argument, prejudiced the jury by

alluding to the "golden rule," by requesting the jurors to "put themselves in [appellee's] place" and asking, "What would you feel like if you had been treated that way?" Appellants objected to counsel's remarks and requested a mistrial, which the trial court denied.

In *Missouri Pacific Railroad Co.* v. *McDaniel*, 252 Ark. 586, 589, 483 S.W.2d 569, 571 (1972), the court recounted the rule that such arguments, as made here, are improper, but it stated our standard of review in these matters as follows:

> "When the ruling of the court is presented to the appellate court in proper manner, then it is the duty of the appellate court to look to the remarks, and weigh their probable effect upon the issues; then to the action of the trial court in dealing with them; and if the trial court has not properly eliminated their sinister effect, and they seem to have created prejudice, and likely produced a verdict not otherwise obtainable, then the appellate court should reverse. However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review." (quoting *Kansas City So. Ry. Co.* v. *Murphy*, 74 Ark. 256, 85 S.W. 428 (1905)).

In our review of the record, we note appellants promptly objected to counsel's argument, and upon denial of their motion for mistrial, they requested no cautionary instruction to the jury. Indeed, the trial court, immediately before counsel's closing statement, already had instructed the jury that remarks during the trial and closing arguments of the attorneys are not evidence, and that any arguments, statements or remarks of attorneys having no basis in the evidence should be disregarded. After the trial court overruled appellants' motion, counsel for appellee made no further prejudicial reference and ended his argument with a six-sentence explanation of why appellee was entitled to damages. We believe the trial court was correct in ruling that any error caused by counsel's remarks did not warrant a mistrial.

Affirmed.